# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY SPODEN, #Y15676, *also known as* NINA SPODEN, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18-cv-0949-NJR ) |
| NIGEL PHELPS, AMANDA SMITH, ALFONSO DAVID, DAN LYNN, JEFFERY M. DENNISON, KASEY PRESCOTT, AUSTIN LASTER, C/O BRISBEE, GIA D. WRIGHT, NURSE KASEY, NURSE JANET, B. VAUGHN, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and UNKNOWN PARTIES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Spoden,[1] an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this civil rights action pursuant to 42 U.S.C. § 1983 in order to address violations of her constitutional rights at Shawnee. (Doc. 1). In the Complaint, Plaintiff alleges that prison officials conspired to retaliate against her for filing grievances. (Doc. 1, pp. 6-39). She seeks monetary damages against the defendants. (Doc. 1, p. 40).

---

[1] Plaintiff's legal name is Anthony Spoden. However, Plaintiff is a transgender inmate who prefers to be called Nina Cole. (Doc. 1, pp. 2, 13). Although the Court must use Plaintiff's legal name, feminine pronouns will be used in reference to Plaintiff.

1

This matter is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As part of the screening order, the Court also will consider whether any claims in the Complaint are improperly joined in this action and are subject to severance. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## Complaint

Plaintiff is a transgender inmate, who is anatomically male but identifies as female. (Doc. 1, p. 35). She is diagnosed with gender dysphoria, generalized anxiety disorder, and borderline personality disorder. (Doc. 1, pp. 35-36). These conditions cause her to suffer from

severe anxiety, crying spells, and depression. (Doc. 1, p. 36). Treatment for gender dysphoria includes hormone therapy, sex reassignment surgery, and experience living as a member of the opposite sex. (Doc. 1, p. 37).

Plaintiff claims that Shawnee has failed to institute policies or practices aimed at ensuring the safety and care of transgender inmates.[2] (Doc. 1). She has allegedly been denied adequate treatment for her gender dysphoria.[3] (Doc. 1, p. 36). She has also been physically assaulted twice and complains of regular sexual harassment. (Doc. 1, p. 37). In addition, transgender inmates are housed in isolation from the general inmate population and one another.[4] (Doc. 1, pp. 35-37).

Plaintiff has used the prison's grievance process to complain about her conditions of confinement and harassment by various prison officials, but Shawnee officials have allegedly conspired to retaliate against her for doing so. (Doc. 1, pp. 6-39). This campaign of retaliation stems from a single incident involving Lieutenant Nigel Phelps. (Doc. 1, pp. 6-7). On September 17, 2017, Phelps noticed that Plaintiff was wearing makeup at lunch.[5] (Doc. 1, p. 6). As Plaintiff stood up from the table, Phelps ordered her to sit back down and "wipe that shit off your face, too." *Id*. Plaintiff explained that she was diagnosed with gender dysphoria, a medical condition that compels her to strive for a more feminine appearance. (Doc. 1, p. 7). Plaintiff informed Phelps that she had a right to do so "within reason." *Id*. When Phelps called her a "liar," Plaintiff asked the officer for his name so that she could file a grievance against him. *Id*.

---

[2] She does not request a prison transfer or a change in prison policies in the Complaint.
[3] Although she does not explain what she means by this assertion, Plaintiff alleges that she began hormone therapy on April 3, 2018. (Doc. 1, p. 37).
[4] Plaintiff cites a single exception in her Complaint. (Doc. 1, pp. 35-37). A transgender inmate who suffers from severe depression and regular suicidal ideations has been allowed to live in the same cell with another transgender inmate. *Id*. The two inmates have a sexual relationship. *Id*. Plaintiff has also requested a cellmate who can offer her moral support, but her requests have been denied. *Id*.
[5] Plaintiff allegedly applied instant coffee to her eyebrows to make them appear full. (Doc. 1, pp. 6-7).

Phelps ordered Plaintiff to cuff up because he was taking her to segregation. (Doc. 1, p. 7). While escorting her there, Phelps told Plaintiff that Shawnee is a "male prison," and he would treat her as a male "as long as [Plaintiff has] a dick between [her] legs." *Id*. Phelps then issued Plaintiff a disciplinary ticket for an undisclosed rule violation, and Plaintiff admitted at the disciplinary hearing that she responded to Phelps in a "smart assed" manner. *Id*. She was punished with 7 days of segregation and 30 days of B-grade status and a commissary restriction. (Doc. 1, pp. 7-8).

On September 19, 2017, Plaintiff filed a complaint against Phelps pursuant to the Prison Rape Elimination Act ("PREA"). (Doc. 1, p. 7). Following a 2-day investigation into the matter, her complaint was deemed unsubstantiated. *Id*. Plaintiff maintains that the investigation was "filled with bias." *Id*.

Plaintiff then filed a grievance against Phelps on October 4, 2017. (Doc. 1, p. 8). She met with Katherine Hammersly[6] (mental health supervisor) and Jeffery Dennison (warden) to discuss her concerns on October 6, 2017. *Id*. At the meeting, Plaintiff complained about the prison's lack of standards for ensuring the safety and care of transgender inmates. *Id*. She pointed out that a disciplinary ticket for wearing makeup was "extreme," given that the inmate manual did not forbid the practice. *Id*. She asked Hammersly and Dennison to restore her A-grade status and commissary privileges. *Id*. They agreed to do so. *Id*.

These events allegedly triggered "a relentless conspiracy [and] campaign to retaliate against [P]laintiff for exercising her First Amendment right to redress [her] grievances." (Doc. 1, pp. 8-9). The Complaint offers numerous examples in support of this claim, but the examples are

---

[6] This individual is not named as a defendant in the case caption, and Plaintiff brings no claim against her. (Doc. 1, pp. 1-5).

poorly organized, largely undeveloped, and seemingly unrelated to the incident involving Phelps. The Court will nevertheless attempt to summarize each example below.

**1.      Disciplinary Tickets**

    A.      <u>Ticket Issued by Defendant Lynn</u>

On October 31, 2017, Plaintiff filed a grievance against Daniel Lynn, a correctional counselor who Plaintiff believed was condoning the misconduct of the inmate peer educators. (Doc. 1, p. 18). Plaintiff complained that these educators dispensed false information about lesbian, gay, bisexual, and transgender ("LGBT") inmates. *Id*. At orientation, the educators suggested that all LGBT inmates at Shawnee have HIV, and they disclosed the names of past inmates who tested positive. *Id*. Plaintiff threatened to contact Internal Affairs and the Springfield Foundation for LGBT Equality for disclosing this information to new inmates as a "scare tactic." (Doc. 1, pp. 18-19).

On November 7, 2017, Lynn issued Plaintiff a disciplinary ticket for "intimidation or threats . . . [e]xpressing words," simply because she filed the grievance against the counselor. (Doc. 1, pp. 9, 19-20). The adjustment committee, which was comprised of Austin Laster and Gia Wright, found Plaintiff guilty of the rule violation. *Id*. She was punished with 15 days of B-grade status, a commissary restriction, and a phone restriction.[7] (Doc. 1, p. 20).

    B.      <u>Ticket Issued by Defendant Vaughn</u>

On or around November 25, 2017, Correctional Officer ("C/O") B. Vaughn issued Plaintiff a disciplinary ticket. (Doc. 1, p. 31). On that date, Plaintiff was released from her cell and permitted to take a shower. *Id*. As she waited outside the shower while the water warmed up, Vaughn ordered Plaintiff to "get in or lock up." *Id*. Plaintiff explained that she was waiting for the shower water to warm up, but Officer Vaughn simply repeated the same order. *Id*.

---

[7] She was only allowed two phone calls per month.

As Plaintiff began setting her items in the shower, the officer again used the intercom system to state, "[T]hat's it. Lock up or get a ticket." (Doc. 1, p. 31). Plaintiff locked up in her cell and then asked to speak with a lieutenant. *Id*. In response, Vaughn issued her a ticket for "socializing with [I]nmate Marcus Sanders" and giving the officer "the middle finger." (Doc. 1, p. 32). Plaintiff denies both. *Id*. When Plaintiff explained this to the adjustment committee, which included Laster, the lieutenant "agreed plaintiff was being harassed by staff" and issued her a verbal reprimand. *Id*.

**2.     Inmate Assault**

On December 12, 2017, Plaintiff was brutally assaulted by a known sexual predator, named Inmate Burton. (Doc. 1, p. 10). Plaintiff claims that the entire incident could have been avoided, if prison officials took steps to separate her from Inmate Burton in the days leading up to the attack. *Id*. Plaintiff informed her caseworker, Amanda Smith, that she was being harassed by Inmate Burton at a group therapy session on November 28, 2017. *Id*. Smith was in charge of Plaintiff's "Coping Skills" group, and she is also a mandatory reporter. (Doc. 1, p. 11). On November 28, 2017, Plaintiff informed Smith that Inmate Burton reached into the shower and attempted to grab her. *Id*. Smith did not report the incident. *Id*. On December 12, 2017, Plaintiff told Smith that there was "ongoing hostility" between the two inmates, and Plaintiff was concerned that the situation would escalate. *Id*. Smith again took no action. *Id*.

That evening, Plaintiff confronted Inmate Burton about his "sexual misconduct." (Doc. 1, p. 12). In response, Inmate Burton brutally attacked Plaintiff, breaking her jaw and ocular bone. *Id*. Plaintiff asserts that the incident could have been avoided, if Smith had taken steps to separate the two inmates. *Id*.

Plaintiff also blames three other unknown defendants (John Doe 1, John Doe 2, and John Doe 3) for failing to intervene and protect her from the assault. (Doc. 1, p. 13). All of the officers were working in Plaintiff's cell house when the assault occurred. *Id*. Plaintiff was attacked "in plain sight" of the officers, and the attack lasted for several minutes. *Id*. None of the officers intervened to stop the attack. (Doc. 1, p. 14).

### 3. Denial of Medical Care

Following the assault, Plaintiff was allegedly denied medical treatment for her injuries. (Doc. 1, p. 21). She was taken to the prison's health care unit ("HCU"), where Nurse Kasey examined her bruised, swollen, and cut eye. *Id*. The nurse taped the wound. *Id*. She also examined Plaintiff's mouth and observed what she believed was a missing tooth. *Id*. Plaintiff told Nurse Kasey that she "felt like her jaw was in pieces." *Id*. The nurse explained that it would take time to "adjust back to normal." *Id*. She gave Plaintiff a blister pack of ibuprofen (18) and sent her to segregation on investigative status. (Doc. 1, p. 22).

The following day, Plaintiff developed a fever. (Doc. 1, p. 22). She also noticed that her jaw "split[ ] in two different directions" when she attempted to speak. *Id*. A segregation officer[8] ignored her requests for medical care. *Id*.

On December 14, 2017, Plaintiff ran out of ibuprofen. (Doc. 1, p. 22). The pain and swelling in her jaw increased dramatically. *Id*. Plaintiff was unable to eat. *Id*. She began to feel weak and dizzy. *Id*. The cut under her eye began to bleed. *Id*. Plaintiff repeatedly asked segregation officers for a nurse, but the officers ignored her. (Doc. 1, p. 23). Plaintiff also requested hygiene supplies to clean her wounds, but her request was denied. *Id*.

---

[8] Plaintiff does not name the segregation officer as a defendant in this action or assert claims against this individual.

While making rounds that day, Nurse Kasey examined Plaintiff's jaw. (Doc. 1, p. 23). She asked another nurse for a second opinion, and the nurse suspected a jaw fracture. *Id*. Plaintiff was transferred to the HCU, where Doctor David examined her and prescribed Motrin (three times daily) for pain. *Id*.

On December 15, 2017, a dentist[9] examined Plaintiff. (Doc. 1, p. 23). The dentist concluded that Plaintiff was missing no teeth; the gap that appeared between her teeth was due to a fractured jaw. *Id*. The dentist prescribed Plaintiff Tylenol-3 every six hours. *Id*. X-rays were also ordered of Plaintiff's jaw. (Doc. 1, pp. 23-24).

Doctor David would not review the x-rays, and the doctor's delay unnecessarily prolonged Plaintiff's pain. (Doc. 1, p. 24). She asked the doctor for more Motrin, but Doctor David denied her request. *Id*. Plaintiff also requested permission to contact a close family member by phone or mail, but these requests were also denied. *Id*.

On December 16, 2017, Plaintiff was taken to an offsite hospital for treatment when her fever spiked. (Doc. 1, p. 24). A CT scan confirmed that her jaw was fractured in multiple places, and surgery was required. *Id*. The treating physician told Plaintiff to return to the prison and prepare for surgery by showering and shaving to prevent infection. (Doc. 1, p. 25). Plaintiff was discharged with a prescription for pain medication and antibiotics. *Id*.

Despite these explicit orders from the doctor, Plaintiff was denied access to a shower and hygiene supplies at the prison. (Doc. 1, p. 26). Eventually, she broke down crying and asked to see a member of the crisis team. (Doc. 1, p. 27). A lieutenant[10] assured Plaintiff that she would receive hygiene supplies and a shower, but she was denied both until December 18, 2017. *Id*.

---

[9] The dentist is not named as a defendant, and Plaintiff brings no claims against her.
[10] The lieutenant is not named as a defendant, and Plaintiff brings no claim against this individual.

8

At an appointment with a specialist that day, Plaintiff learned that a hematoma had formed under her jaw and become infected. (Doc. 1, p. 28). She also learned that her ocular bone was fractured but would heal on its own, but she would likely suffer from permanent vision impairment (*i.e.*, black spots). *Id*.

Plaintiff underwent jaw surgery on December 20, 2017. (Doc. 1, p. 28). Pins and plates were installed in her jaw. *Id*. She returned to the prison the following day, where she was taken off of investigative status while still in the HCU. *Id*. Plaintiff's stitches tore in the back of her mouth while she was eating two days later. *Id*. A nurse told her that "it will heal on its own." *Id*. Plaintiff reported continued pain and difficulty eating when Doctor David met with her on December 27, 2017. *Id*. Despite these statements, Doctor David issued orders discontinuing Plaintiff's soft diet, terminating her pain medication, and discharging her to the general prison population. (Doc. 1, pp. 28-29).

Plaintiff's fever returned the following day, and a nurse told Plaintiff that Doctor David would meet with her. (Doc. 1, p. 29). This never happened. *Id*. Plaintiff continued to struggle with fever, difficulty eating, bleeding, and pain for several days. (Doc. 1, pp. 29-30). When she met with a surgeon for a follow-up appointment sometime around January 1, 2018, the surgeon recommended a course of antibiotics and pain medication. *Id*. However, the surgeon assured her that everything was healing properly. *Id*.

**4.     Staff Assault**

On January 13, 2018, Lieutenant Phelps allegedly used excessive force against Plaintiff. (Doc. 1, p. 14). On that date, Plaintiff remained in her cell during lunch because she had no clean laundry. (Doc. 1, p. 15). At the time, she was wearing a robe that she received in the HCU. *Id*. Her cell was cold, and she began to ask Officer Prescott for permission to open her cell door to

allow warm air to flow into her cell. *Id*. Before she could do so, Phelps entered the cell house and demanded Plaintiff's robe back. *Id*. To avoid a confrontation, Plaintiff relinquished the robe and wrapped herself in a blanket. *Id*.

When the other inmates returned from lunch, Plaintiff attempted to engage Phelps in conversation. (Doc. 1, p. 15). As Plaintiff spoke, Phelps slammed the cell door "with force" in her face. *Id*. The door hit Plaintiff's jaw and tore the stitches in her mouth. *Id*. Out of frustration, Plaintiff told Phelps that she intended to sue him. (Doc. 1, pp. 15-16). Officers Prescott and Brisbee stood watching but took no action to intervene and protect Plaintiff. (Doc. 1, p. 16). They also failed to file an incident report. (Doc. 1, p. 17). Instead, they signed as witnesses to a second disciplinary report issued by Phelps against Plaintiff. *Id*. When Plaintiff met with Nurse Janet in the HCU "later," she "attempted to cover up the excessive force" by failing to document the new injuries. (Doc. 1, p. 16).

On January 14, 2018, Plaintiff complained about the incident. (Doc. 1, p. 16). Internal affairs conducted an investigation. (Doc. 1, pp. 16-17). A medical report issued during the investigation revealed new injuries to Plaintiff's jaw. (Doc. 1, p. 17). A piece of Plaintiff's jaw bone had broken loose. *Id*. It became so painful that Plaintiff extracted the loose bone "from a hole under [her] chin" a month later. *Id*. Despite the information in this medical report, the investigation resulted in a recommendation to return Plaintiff to the general prison population on or around February 14, 2018. (Doc. 1, pp. 16-18).

### Claims

The Court deems it appropriate to divide the *pro se* action into the following enumerated counts to facilitate the orderly management of future proceedings in this case and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b):

**Count 1 -** Claims against Defendants for conspiring to retaliate against Plaintiff because she filed grievances to complain about Officer Phelps and the conditions of her confinement at Shawnee.

**Count 2 -** Fourteenth Amendment due process claim against Defendant Dennison for mishandling Plaintiff's grievances regarding the conditions of her confinement or various prison officials, by ignoring, denying, delaying, or disposing of the grievances.

**Count 3 –** Eighth and/or Fourteenth Amendment claims against Defendant Dennison for failing to establish policies and procedures necessary to ensure the safety and care of transgender inmates at Shawnee.

**Count 4 -** Eighth Amendment deliberate indifference claim for failing to provide Plaintiff with adequate medical and mental health care for her gender dysphoria, including counseling and hormone therapy.

**Count 5 -** First Amendment claim against Defendant Phelps for denying Plaintiff the right to express her gender by wearing makeup on or around September 17, 2017.

**Count 6 -** First Amendment retaliation claim against Defendant Phelps for issuing Plaintiff a disciplinary ticket on or around September 17, 2017, for an undisclosed reason or rule violation.

**Count 7 -** Fourteenth Amendment claim against Defendant Phelps[11] for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with a week of segregation and a month of B-grade status and a commissary restriction in connection with the disciplinary ticket issued on or around September 17, 2017.

**Count 8 -** First Amendment retaliation claim against Defendant Lynn for issuing Plaintiff a disciplinary ticket for "intimidation or threats . . . [e]xpressing words" on or around November 7, 2017, after Plaintiff filed a grievance against Defendant Lynn for condoning the alleged misconduct of inmate peer educators on or around October 31, 2017.

**Count 9 -** Fourteenth Amendment claim against Defendants Lynn, Laster, and Wright for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with segregation, demotion to B-grade status, and a commissary restriction in

---

[11] Plaintiff failed to identify the adjustment committee members who considered the ticket issued by Defendant Phelps on or around September 17, 2017. Therefore, the Court has only listed Defendant Phelps in connection with this due process claim.

connection with the disciplinary ticket issued on November 7, 2017.

**Count 10 -** First Amendment retaliation claim against Defendant Vaughn for issuing Plaintiff a false disciplinary ticket for socializing with an inmate and giving an officer the middle finger on or around November 25, 2017, because Plaintiff filed grievances.

**Count 11 -** Fourteenth Amendment claim against Defendants Vaughn and Laster for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with a verbal reprimand for the false disciplinary ticket issued by Defendant Vaughn on November 25, 2017.

**Count 12 -** Eighth Amendment claim against Defendant Smith for failing to take steps to protect Plaintiff from a known risk of harm posed by Inmate Burton, who assaulted Plaintiff on December 12, 2017.

**Count 13 -** Eighth Amendment claim against John Doe 1, John Doe 2, and John Doe 3 for failing to intervene and protect Plaintiff from the attack by Inmate Burton on December 12, 2017.

**Count 14 -** Eighth Amendment deliberate indifference to medical needs claim against Defendants Kasey and David for failing to provide timely and adequate medical care for Plaintiff's fractured jaw, fractured ocular bone, pain, and infection following the inmate assault that occurred on December 12, 2017.

**Count 15 -** Eighth Amendment claim against Defendant Phelps for using excessive force against Plaintiff on or around January 13, 2018.

**Count 16 -** Illinois state law claims for assault and battery against Defendant Phelps for using excessive force against Plaintiff on or around January 13, 2018.

**Count 17 -** Eighth Amendment claim against Defendants Prescott and Brisbee for failing to intervene and protect Plaintiff from Phelps on or around January 13, 2018.

**Count 18 -** Eighth Amendment claim against Defendant Janet for failing to document or treat the injuries Plaintiff sustained on or around January 13, 2018, in a conspiracy to cover up Phelps' misconduct.

**Count 19 –** First and/or Fourteenth Amendment claim against Defendants Phelps, Prescott, and Brisbee for issuing Plaintiff a false disciplinary ticket on January 13, 2018.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These designations do not constitute an opinion regarding the merits of the claims. **Any claims that are encompassed by the allegations in the Complaint but not identified above are considered dismissed without prejudice for failure to meet the *Twombly* pleading standards.**

## Discussion

Plaintiff attempts to bring 19 claims against 15 known and numerous unknown defendants in a single action. The only common thread between them is Count 1, *i.e.*, Plaintiff's claim that the defendants all conspired to retaliate against her for filing grievances against Defendant Phelps. In support of her conspiracy claim, Plaintiff recites the elements of that cause of action in conclusory fashion. (Doc. 1, pp. 8-9). Even at this early stage, conclusory allegations are insufficient to state a conspiracy claim.

The Supreme Court has made it clear that Rule 8 of the Federal Rules of Civil Procedure requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A formulaic recitation of the elements of a cause of action will not satisfy the Rule 8 standard. *Twombly*, 550 U.S. at 555. Plaintiff must instead set forth sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570. In her Complaint, Plaintiff has failed to nudge her claim from the realm of "possible" to "plausible" because she offers no plausible link between Count 1 and the other claims. *Id.* Count 1 falls short of stating a claim and shall therefore be dismissed without prejudice.

What remains are 18 claims against different defendants, and these claims cannot proceed together in a single action. Rules 18 and 20 of the Federal Rules of Civil Procedure allow joinder

of multiple claims against multiple defendants. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854 (7th Cir. 2018) (providing overview of joinder rules). According to Rule 20, multiple defendants may be joined in a single action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of **the same transaction, occurrence, or series of transactions or occurrences**" and "any question of law or fact common to all defendants will arise in the action." *See* FED. R. CIV. P. 20(a)(2) (emphasis added). Rule 18 authorizes a properly joined party to bring "as many claims as it has against an opposing party." *See* FED. R. CIV. P. 18(a). These rules are "broad" and thus give district courts "considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes." *Lovell*, 888 F.3d at 863. However, the rules are not without limits. *Id*.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)). This is "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id.* A prisoner who files a "buckshot complaint" cannot avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (citing *George*). The Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). When deciding whether to sever claims or to dismiss improperly joined defendants, the Seventh Circuit has

14

repeatedly reminded district courts that they have broad discretion to do both. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). *See also* FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). The remedy for misjoinder of otherwise proper claims is severance or dismissal without prejudice. *Lovell*, 888 F.3d at 862-63.

Against this backdrop, the Court has reviewed Plaintiff's claims against the defendants and determined that they arise from separate transactions, occurrences, and/or series of transactions or occurrence within the meaning of Rule 20, as follows:

> **Counts 2 and 3** against Defendant Dennison for failing to address Plaintiff's grievances and complaints regarding the treatment of transgender inmates at Shawnee by developing policies or practices aimed at the care and safety of these inmates.
>
> **Count 4** against no identified defendant for providing inadequate medical care and mental health treatment for Plaintiff's gender dysphoria.
>
> **Counts 5, 6, and 7** against Defendant Phelps for issuing Plaintiff a disciplinary ticket and punishing her for undisclosed rule violations on or around September 17, 2017.
>
> **Count 8, 9, 10, and 11** against Defendants Lynn, Vaughn, Wright and/or Laster for taking unwarranted disciplinary action against Plaintiff on or around November 7 and 25, 2017.
>
> **Counts 12 and 13** against Defendant Smith, Doe 1, Doe 2, and/or Doe 3 for failing to protect Plaintiff from the inmate attack that occurred on December 12, 2017.
>
> **Count 14** against Defendants Kasey and David for failing to provide timely and adequate medical treatment for the injuries Plaintiff sustained as a result of the inmate assault on December 12, 2017.
>
> **Counts 15, 16, 17, 18, and 19** against Defendants Phelps, Prescott, Brisbee, and/or Janet for mistreating Plaintiff on or around January 13, 2018.

Consistent with *George* and Federal Rule of Civil Procedure 21, the Court will exercise its discretion to sever or dismiss the misjoined claims, as follows: **COUNT 1** shall be dismissed without prejudice for failure to state a claim; **COUNTS 2** and **3** shall proceed in *this action*; **COUNT 4** shall be dismissed without prejudice for failure to name a defendant in connection with the claim (and because the Court is unable to ascertain who the claim is against); **COUNTS 5, 6, 7** and **15, 16, 17, 18,** and **19** shall proceed as **SEVERED CASE #1**; **COUNTS 8, 9, 10,** and **11** shall proceed as **SEVERED CASE #2**; **COUNTS 12** and **13** shall proceed as **SEVERED CASE #3**; **COUNT 14** shall proceed as **SEVERED CASE #4.**

Each newly-severed case shall receive a new case number, and Plaintiff shall be assessed another filing fee for the case. Because Plaintiff's Motion for Leave to Proceed *in forma pauperis* ("IFP") was already granted in this case, Plaintiff will be granted leave to proceed IFP in each newly-severed case. Finally, the claims in each case will be separately screened under 28 U.S.C. § 1915A.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **3** will remain in *this action* and be screened pursuant to 28 U.S.C. § 1915A in a separate order.

**IT IS ALSO ORDERED** that **COUNTS 5-19**, which are unrelated to **COUNTS 2** and **3,** are **SEVERED** into 4 new cases, as follows:

**SEVERED CASE 1** involving **COUNTS 5, 6, 7, 15, 16, 17, 18,** and **19** against Defendants Phelps, Brisbee, Prescott, and/or Janet shall be captioned: **ANTHONY SPODEN,**

**Plaintiff v. NIGEL PHELPS, KASEY PRESCOTT, C/O BRISBEE,** and **NURSE JANET**, **Defendants.**

**SEVERED CASE 2** involving **COUNTS 8, 9, 10,** and **11** against Defendants Lynn, Vaughn, Laster, and/or Wright shall be captioned: **ANTHONY SPODEN, Plaintiff v. DAN LYNN, AUSTIN LASTER, GIA D. WRIGHT, and B. VAUGHN, Defendants.**

**SEVERED CASE 3** involving **COUNTS 12** and **13** against Defendants Smith, Doe 1, Doe 2, and/or Doe 3 shall be captioned: **ANTHONY SPODEN, Plaintiff v. AMANDA SMITH, JOHN DOE 1, JOHN DOE 2, and JOHN DOE 3, Defendants.**

**SEVERED CASE 4** involving **COUNT 14** against Defendants Kasey and David shall be captioned: **ANTHONY SPODEN, Plaintiff v. NURSE KASEY and ALFONSO DAVID, Defendants.**

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;

(2) The Complaint (Doc. 1);

(3) Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2);

(4) Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Plaintiff will be assessed an additional filing fee for each newly-severed case. Because Plaintiff was granted leave to proceed IFP in this case, however, she shall be granted leave to proceed as a poor person in each newly-severed case as well. The claims in the newly-severed cases will be screened pursuant to 28 U.S.C. § 1915A after the new case numbers and judge assignments are made. No service shall be ordered on the defendant(s) in the newly-severed cases until the Section 1915A review is complete.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 2 and 3 against Defendant JEFFERY M. DENNISON*. This case shall now be captioned: **ANTHONY SPODEN, Plaintiff v. JEFFERY M. DENNISON, Defendant.**

**IT IS ORDERED** that Defendants **NIGEL PHELPS, AMANDA SMITH, ALFONSO DAVID, DAN LYNN, KASEY PRESCOTT, AUSTIN LASTER, C/O BRISBEE, GIA D. WRIGHT, NURSE KASEY, NURSE JANET, B. VAUGHN, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,** and **UNKNOWN PARTIES** are **DISMISSED** with prejudice from *this* action because they are not named in connection with Counts 2 and 3.

Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** July 16, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**